IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Action No. 22-55-CFC |
| : | |
| JOSE PEREZ, : | |
| : | |
| Defendant. : | |

Kevin P. Pierce, Assistant United States Attorney, Wilmington, Delaware

   *Counsel for United States of America*

Eleni Kousoulis, Federal Public Defender, Wilmington, Delaware; Janet Bateman, First Assistant, Office of the Federal Public Defender, Wilmington, Delaware

   *Counsel for Defendant*

### **MEMORANDUM OPINION**

May 9, 2023
Wilmington, Delaware

_[signature]_
COLM F. CONNOLLY
CHIEF JUDGE

Defendant Jose Perez has moved to suppress evidence, including a firearm, seized by police when they executed a search warrant of 32 Hamilton Court in New Castle, Delaware in January 2022. D.I. 20. He also seeks the suppression of statements he made to law enforcement after the search. Perez argues that the search violated his Fourth Amendments rights and that his statements fall within the fruits-of-the-poisonous-tree doctrine.[1] The motion has been fully briefed, *see* D.I. 20, 23, 24; and I heard oral argument on the motion.

## I. BACKGROUND

Wilmington Police officers searched 32 Hamilton Court on January 21, 2022 pursuant to a search warrant issued by a Delaware Justice of the Peace judge two days earlier. Detective James Coffiey submitted the application and affidavit for the warrant. *See* D.I. 23-1 at 3–10. The affidavit included the following information.

---

[1] Perez stated in his motion that the search also violated his Fifth and Sixth Amendment rights, but his briefing addresses only alleged Fourth Amendment violations. *See generally* D.I. 20, 24.

In the third week of December 2021, Detective Coffiey learned from a "past proven reliable" confidential informant (CI) that:

- Two people—Jose Perez and Raymere Broomer—were selling heroin/fentanyl.
- Broomer lived in a second-floor apartment "in the area of E. 13th Street and N. French Street."
- Perez leased the second-floor apartment and used it as a stash house for drugs and firearms.
- Perez did not live in the second-floor apartment. Instead, he lived in New Castle Delaware, in the area of Route 273, with his girlfriend.
- Perez's girlfriend worked "in the 400 block of W. 23rd street" and drove a white Chevrolet Malibu that had a heavy tint.
- Perez drove a black Hyundai "with heavy tint."
- The CI had seen Perez with a black handgun, and both Perez and Broomer had discussed keeping a "Draco" assault rifle in the second-floor apartment.

D.I. 23-1 at 5; *see also* D.I. 20 at 2–3.

After speaking with the CI, Detective Coffiey ran inquiries on Perez and Broomer in the Delaware Criminal Justice Information System database (DELJIS). Perez's listed DELJIS address was 1310 N. French Street, Apartment B (the French Street Apartment), and he had a black Hyundai Sonata registered in his name. D.I. 23-1 at 5; D.I. 20 at 3. The DELJIS inquiries also revealed "that Perez ha[d] an extensive criminal history with 4 violent drug and firearm related felony convictions"; and that Broomer had two violent drug and firearm felony convictions, as well as three outstanding arrest warrants for drug offenses. D.I. 23-1 at 5.

2

On January 4, 2022, Detective Coffiey spot checked the 400 block of West 23rd street. D.I. 23-1 at 5–6. He saw there a white Chevrolet Malibu "with heavy tint[ed] [windows]" parked on the side of the street. D.I. 23-1 at 6. Detective Coffiey ran a DELJIS inquiry on this Malibu, and learned that the car was registered to Michelle Merritt, who had a listed address of "32 Court Drive New Castle, Delaware 19720." D.I. 23-1 at 6. Coffiey then showed Merritt's DELJIS photograph to the CI, and the CI stated that the person in the photograph was Perez's girlfriend. D.I. 23-1 at 6.

On January 5, 2022, Detective Coffiey went to 32 Hamilton Court (Merritt's Residence),[2] where he saw two vehicles—one that looked like Perez's black Hyundai, and the other like Merritt's white Chevrolet. D.I. 23-1 at 6; *see also* D.I. 20 at 5.

During that same week, Detective Coffiey and other Wilmington Police Department (WPD) officers surveilled the French Street Apartment. On one day, officers watched Broomer leave the apartment and "appear to conduct a hand-to-

---

[2] The search warrant affidavit identifies Merritt's DELJIS address as "32 Court Drive" and the address that Detective Coffiey surveilled as "32 Hamilton Court." The parties, however, have treated both of these addresses as 32 Hamilton Court. *See* D.I. 20 at 5 (noting that Merritt's car was "registered with an address of '32 [sic] drive New Castle Delaware'") (alteration in the original); *see also generally* D.I. 26 (transcript of oral argument, during which Perez never argued that the two addresses referred to different locations).

3

hand drug transaction with an individual in a vehicle." D.I. 23-1 at 6. Thereafter, Detective Coffiey stopped the vehicle, and the individual "ultimately admitted to possessing numerous clear in color glassine baggies each containing a blue wax paper stamped 'Sharkbite' (heroin/fentanyl)." D.I. 23-1 at 6. The individual further admitted to purchasing heroin/fentanyl from Broomer and stated that Broomer had "mentioned having two firearms, one being a glock handgun and the other being [a] 'Draco' assault rifle." The individual also told WPD that Broomer had said that Perez leased the French Street Apartment but lived elsewhere. D.I. 23-1 at 6; *see also* D.I. 20 at 3.

On January 11, 2022, at about 6:46 p.m., officers saw Perez's car arrive at the French Street Apartment. Perez and a woman exited the car and entered the apartment. At 7:25 p.m., Perez and the woman exited the apartment and re-entered Perez's car. D.I. 23-1 at 7; *see also* D.I. 20 at 4. Officers attempted to follow Perez, but they lost sight of the car. D.I. 23-1 at 7. At about 9:34 p.m., video surveillance showed Perez returning to the apartment in his registered car. Perez carried a "large dark multi-colored backpack" into the apartment. Several minutes later, Perez and Broomer exited the apartment and entered Perez's car. Neither person was carrying any items when they left the apartment. D.I. 23-1 at 7; *see also* D.I. 20 at 4.

4

On January 12, officers watched Broomer leave the French Street Apartment and enter a vehicle. Officers stopped the vehicle and took Broomer into custody. Officers found on Broomer's person a black handgun and eight bundles of heroin/fentanyl. D.I. 23-1 at 7; *see also* D.I. 20 at 3.

Later that day, officers executed a search warrant of the French Street Apartment. D.I. 23-1 at 7; *see also* D.I. 20 at 3–4. Officers found in the apartment "approximately 90 logs of Heroin/ Fentanyl (11,700 baggies) stamped 'Sharkbite' and 'Mustang,'" a 7.62x39 caliber assault rifle, ".22 caliber ammunition and .57x28 caliber ammunition," and "multiple paper work documents belonging to Jose Perez and Broomer." D.I. 23-1 at 7; *see also* D.I. 20 at 3–4. Officers also found a dark multi-colored backpack that contained 87 logs of the heroin/fentanyl. D.I. 23-1 at 7; *see also* D.I. 20 at 4. Officers believed that the dark multi-colored backpack was the same backpack that Perez had carried into the apartment the night before. D.I. 23-1 at 7.

After searching the French Street Apartment, Detective Coffiey obtained a warrant for Perez's arrest for firearm and drug charges. D.I. 23-1 at 7.

On January 19, 2022, Detective Coffiey returned to 32 Hamilton Court, where he saw Perez's car parked out front. At about 11:35 a.m., Coffiey saw Merritt arrive in her white Chevrolet Malibu. D.I. 23-1 at 8; *see also* D.I. 20 at 5.

5

At about 12:25 p.m., "Perez was observed exiting the residence." D.I. 23-1 at 8; D.I. 20 at 5. Perez went first to a nearby dumpster and then to his car.

Near the end of the search warrant affidavit, Detective Coffiey stated that:

> This officer knows through training and experience that drug dealers often keep drugs in their residence as well as proceeds (United States Currency) that they obtain through drug sales. Per CI[,] Perez is also supposed to be in possession of a Black in color handgun.

D.I. 23-1 at 8; D.I. 20 at 5.

## II. LEGAL STANDARDS

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.* "The ultimate touchstone of the Fourth Amendment . . . is reasonableness." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (*per curiam*) (internal quotation marks and citation omitted). To deter the government from violating the Fourth Amendment, evidence collected through an unreasonable search or seizure may be suppressed. *See United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014). Evidence that is not acquired directly through a Fourth Amendment violation but

6

would not have been acquired but for investigators exploiting a Fourth Amendment violation may also be suppressed as "fruit of the poisonous tree." *United States v. DeSumma*, 272 F.3d 176, 179 (3d Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

## III. DISCUSSION

Perez argues that the search warrant affidavit did not provide a substantial basis to support the Justice of the Peace judge's probable cause finding and that the good faith exception to the exclusionary rule does not apply here. *See* D.I. 20 at 1.

### A. The Search Warrant Affidavit Provided a Substantial Basis to Support the Justice of the Peace Judge's Probable Cause Finding

"The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether the magistrate [who issued the search warrant] had a substantial basis for concluding that probable cause existed." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (internal quotation marks and citation omitted). "If a substantial basis exists to support the magistrate's probable cause finding, [the court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *Id.* (internal quotation marks and citation omitted).[3] Although district courts "do not merely

---

[3] I stated during the oral argument that "*[i]n my mind*, there is no probable cause . . . for the cops to have believed that there would have been drugs or a weapon in 32 Hamilton Court." D.I. 26 at 26:6–9 (emphasis added); *see also* D.I. 26 at 38:14–17. I formed that view largely based on the fact that the affidavit identified

7

rubber stamp a magistrate's conclusions, [they] must heed the Supreme Court's direction that doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (internal quotation marks and citations omitted); *see also Illinois v. Gates*, 462 U.S. 213, 236 (1983) (instructing district courts to accord "great deference" to the magistrate's decision).

"When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *Stearn*, 597 F.3d at 558. But the affidavit is insufficient if it "suggests only that the suspect is actually a drug dealer and that the place to be searched is possessed by, or the domicile of, the suspect. There must also be evidence linking the targeted location to the suspect's drug activities." *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020) (internal quotation marks, alterations, and citations omitted).

In this case, the search warrant affidavit provided the Justice of the Peace judge with a substantial basis to conclude that there was probable cause that drugs or weapons would be found in Merritt's Residence. The affidavit disclosed (1) the CI's statements that Perez leased the French Street Apartment and used it to store

---

32 Court Drive as Merritt's DELJIS address and 32 Hamilton Court as the address surveilled and ultimately searched by the officers. In any event, whether I would have signed the search warrant in the first instance is of no moment.

8

firearms and drugs; (2) the CI's statements that Perez and Broomer kept a "Draco" assault rifle in the apartment and that the CI had seen Perez with a black handgun; (3) Detective Coffiey's surveillance of Perez, Merritt, and their vehicles at Merritt's Residence; (4) officers' investigation of the French Street Apartment and the observation of Perez entering the apartment with a dark, multi-colored backpack; (5) the evidence seized from and the statements made by the individual whom officers watched conduct a hand-to-hand drug transaction with Broomer; (6) the evidence found on Broomer's person, including heroin/fentanyl and a firearm; (7) the trafficking-level quantities of drugs that were found in the French Street Apartment, including the 87 logs of heroin/fentanyl that were found in what officers believed to be the same dark, multi-colored backpack that Perez had carried into the apartment the night before; (8) the 7.62x39 caliber assault rifle and the ".22 caliber ammunition and .57x28 caliber ammunition" that were found in the apartment; (9) the documents with Perez's name on them that were found in the apartment; (10) the warrant for Perez's arrest for firearm and drug charges; (11) Detective Coffiey's conclusions, "based upon [his] training, experience, and participation in other drug investigations," about where contraband would be found; and (12) Detective Coffiey's statement that "[p]er CI[,] Perez is also supposed to be in possession of a Black in color handgun."

I also note that Perez relies on case law that primarily discusses the circumstances relevant to assessing whether there is probable cause that a drug dealer is keeping *drugs* in his residence. But this case is about whether the search warrant affidavit provided sufficient information for the Justice of the Peace judge to conclude that there was probable cause that Merritt's Residence contained drugs or *firearms*. The search warrant affidavit expressly sought authorization to seize both drugs and "[a]ny rifle, pistol, handgun or . . . any weapon manifestly utilized to protect illegal drugs." D.I. 23-1 at 4. Moreover, the affidavit states that officers had found ".22 caliber ammunition and .57x28 caliber ammunition," but officers found only a 9mm handgun on Broomer's person and a 7.62x39 caliber assault rifle in the French Street Apartment. D.I. 23-1 at 7. The caliber discrepancies between the firearms and ammunition seized suggest that Perez and/or Broomer owned additional firearms that were still unaccounted for at the time Detective Coffiey submitted his search warrant application. These discrepancies further bolster the affidavit's statement that "[p]er CI[,] Perez is also supposed to be in possession of a Black in color handgun." D.I. 23-1 at 8.

Finally, I reject Perez's argument that the CI's statements should be disregarded because the affidavit "contains no specific evidence regarding the reliability of the informant." D.I. 20 at 7–8. "[C]orroboration of details of an informant's tip by independent police work" may provide the substantial basis

10

required for a probable cause determination. *Gates*, 462 U.S. at 241–42. Perez concedes this point but argues that Detective Coffiey and his fellow officers corroborated only "innocent information" about Perez. D.I. 20 at 9–10. I disagree. The CI told the officers that Perez and Broomer kept drugs and a "Draco" assault rifle in the French Street Apartment. D.I. 23-1 at 5. That is hardly innocent information. And the officers corroborated this information when they searched the French Street Apartment and found an assault rifle, ammunition, and trafficking-level quantities of heroin/fentanyl. D.I. 23-1 at 7.

In sum, Detective Coffiey's affidavit provided a substantial basis to support the Justice of the Peace judge's probable cause finding. Because "a substantial basis exists to support the [Justice of the Peace judge's] probable cause finding, [I] must uphold that finding even if a different [Justice of the Peace] might have found the affidavit insufficient to support a warrant." *Stearn*, 597 F.3d at 554 (internal quotation marks and citation omitted).

### B. Detective Coffiey and His Fellow Officers Acted in Good Faith

Even if the search warrant affidavit did not provide a substantial basis to support the Justice of the Peace judge's probable cause finding, the evidence seized in the search of Merritt's Residence still should not be suppressed because the officers who executed the warrant acted in good faith reliance on it. The Supreme Court has held that the exclusionary rule's deterrence rationale is not justified

11

"when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 918 (1984).

Perez argues that the good faith exception does not apply here because the affidavit so lacked the necessary indicia of probable cause that its existence is entirely unreasonable. *See United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001) (stating that the good faith exception does not apply "when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable") (alteration, internal quotation marks, and citation omitted). Specifically, Perez again argues that "[t]he affidavit provided no specific evidence on the reliability of the CI," "wholly failed to establish a nexus between the alleged crime and the [Merritt] [R]esidence," and "failed to include any facts indicating probative evidence would be found at the [Merritt] [R]esidence." D.I. 20 at 14. Because I already rejected these arguments in concluding that the warrant was not deficient, "it follows *a fortiori* that the warrant was not so facially deficient that an officer could not have reasonably relied on it." *United States v. Alexander*, 2020 WL 1274446, at *8 (D. Del. Mar. 17, 2020), *aff'd*, 54 F.4th 162 (3d Cir. 2022).

## IV. CONCLUSION

For the foregoing reasons, I will deny Perez's Motion to Suppress Evidence (D.I. 20).

The Court will issue an order consistent with this Memorandum Opinion.